[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION REGARDING PLAINTIFF'S MOTION FOR COMPLETE TRANSCRIPT OF JUDICIAL PROCEEDING CODED 409, PLAINTIFF'S MOTION FOR COMPLETE TRANSCRIPT OF JUDICIAL PROCEEDING CODED #410, PLAINTIFF'S MOTION FOR COMPLETE TRANSCRIPT OF THE TRIAL CODED #411, AND PLAINTIFF'S MOTION TO WAIVE THE FEE REQUIRED FOR THE PLAINTIFF TO FILE AN APPEAL CODED #413
In support of the above four motions the plaintiff relies in CT Page 4374 part on M.L.B. v. S.L.J., 519 U.S. 102 (1996). The issue in M.L.B. v. S.L.J. was whether a State consistent with the Due Process and Equal Protection Clauses of the Fourteenth Amendment may condition appeals from a trial court decree terminating parental rights on the affected parents' ability to pay record preparation fees. In holding that such a condition was unconstitutional the court at pages 113, 114, 116, 117, 118, 119, 120, 121, 124, 127 and 128 stated in part as follows:
 We have also recognized a narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court fees. In Boddie v. Connecticut, 401 U.S. 371
(1971), we held that the State could not deny a divorce to a married couple based on their inability to pay approximately $60 in court costs. Crucial to our decision in Boddie was the fundamental interest at "[G]iven the basic position of the marriage relationship in this society's hierarchy of values and the concomitant state monopolization of the means for legally dissolving this relationship," we said, due process "prohibit[s] a State from denying, solely because of inability to pay, access to its courts to individuals who seek judicial dissolution of their marriages." Id., at 374; see also Little v. Streater, 452 U.S. 1, 13-17 (1981) (state must pay for blood grouping tests sought by an indigent defendant to enable him to contest a paternity suit). . . .
 The following year, in United States v. Kras, 409 U.S. 434 (1973), the court clarified that a constitutional requirement to waive court fees in civil cases is the exception, not the general rule. . . .
 In sum, as Ortwein underscored, this Court has not extended Griffin to the broad array of civil cases. But tellingly, the Court has consistently set apart from the mine run of cases those involving state controls or intrusions on family relationships. In that domain, to guard against undue official intrusion, the Court has examined closely and contextually the importance of the governmental interest advanced in defense of the intrusion. Cf. Moore v. East Cleveland, 431 U.S. 494 (1977). . . .
M.L.B.'s case, involving the State's authority to sever CT Page 4375 permanently a parent-child bond, demands the close consideration the Court has long required when a family association so undeniably important is at stake. We approach M.L.B.'s petition mindful of the gravity of the sanction imposed on her and in light of two prior decisions most immediately in point. . . .
 Significant to the disposition of M.L.B.'s case, the Lassiter Court considered it "plain . . . that a parent's desire for and right to `the companionship, care, custody, and management of his or her children' is an important interest," one that "undeniably warrants deference and, absent a powerful countervailing interest, protection.'" Id. at 27 (quoting Stanley v. Illinois, 405 U.S. 645, 651 (1972). The object of the proceeding is "not simply to infringe upon [the parent's] interest," the Court recognized, "but to end it"; thus, a decision against the parent "work[s] a unique kind of deprivation." Lassiter, 452 U.S., at 27. For that reason. "[a] parent's interest in the accuracy and justice of the decision . . . is . . . a commanding one." Ibid.; see also Id., at 39 (Blackimun, J. dissenting) ("A termination of parental rights is both total and irrevocable. Unlike other custody proceedings, it leaves the parent with no right to visit or communicate with the child . . ." (footnote omitted)).
 Santosky held that a "clear and convincing" proof standard is constitutionally required in parental termination proceedings. 455 U.S., at 769-770. In so ruling, the Court emphasized that a termination decree is "final and irrevocable." Id., at 759 (emphasis in original). "Few forms of state action." the court said. "are both so severe and so irreversible." Ibid. As in Lassiter, the Court characterized the parent's interest as "commanding," indeed, "far more precious than any property right." 455 U.S., at 758-759. . . .
 We place this case within the framework established by our past decisions in this area. In line with those decisions, we inspect the character and intensity of the individual interest at stake, on the one hand, and the State's justification for its exaction, on the other. See Bearden, 461 U.S., at 666-667. . . .
 Similarly here, the stakes for petitioner M.L.B. — forced dissolution of her parental rights — are large. "`moreCT Page 4376 substantial than mere loss of money.'" Santosky. 455 U.S., at 756
(quoting Addington v. Texas, 441 U.S. 418, 424 (1979). In contrast to loss of custody, which does not sever the parent-child bond, parental status termination is "irretrievabl[y] destructi[ve]" of the most fundamental family relationship. . . .
 But our cases solidly establish two exceptions to that general rule. The basic right to participate in political processes as voters and candidates cannot be limited to those who can pay for a license. Nor may access to judicial processes in cases criminal or "quasi criminal nature," Mayer. 404 U.S., at 196 (citation and internal quotation marks omitted), turn on ability to pay. In accoid with the substance and sense of our decision in Lassiter and Santosky, see supra, at 117-120, we place decrees forever terminating parental rights in the category of cases in which the State may not "bolt the door to equal justice," Griffin, 351 U.S., at 24 (Frankftirter, J., concurring in judgment); see supra, at 110. . . .
 But we have repeatedly noticed what sets parental status termination decrees apart from mine run civil actions, even from other domestic relations matters such as divorce. paternity, and child custody. See supra, at 117 120, and n. 11. To recapitulate. termination decrees "wor[k] a unique kind of deprivation. Lassiter, 452 U.S., at 27. In contrast to matters modifiable at the parties' will or based on changed circumstances, termination adjudications involve the awesome authority of the State "to destroy permanently all legal recognition of the parental relationship. " Rivera, 483 U.S., at 580. Our Lassiter and Santosky decisions. recognizing that parental termination decrees are among the most severe forms of state action. Santosky. 455 U.S., at 759. have not served as precedent in other areas. See supra, at 118, n. 11. We are therefore satisfied that the label "civil" should not entice us to leave undisturbed the Mississippi courts' disposition of this case. Cf. In re Gault, 387 U.S., at 50. (emphasis provided). . . .
Page 118 note 11 is as follows:
In Rivera v. Minnich, 483 U.S. 574 (1987), the court declined to extend Santosky to paternity proceedings. The Court distinguished the State's imposition of the legal CT Page 4377 obligations attending a biological relationship between parent and child from the State's termination of a fully existing parent-child relationship. See Rivera, 483 U.S., at 579-582. In drawing this distinction, the Court found it enlightening that state legislatures had similarly separated the two proceedings: Most jurisdictions applied a "preponderance of the evidence" standard in paternity cases, while 38 jurisdictions, at the time Santosky was decided, required a higher standard of proof in proceedings to terminate parental rights. See Rivera, 438 U.S., at 578-579
(citing Santosky, 455 U.S., at 749-750).
This court holds that a change of custody case does not fall in the "narrow category of civil cases in which the State must provide access to its judicial processes without regard to a party's ability to pay court fees. The constitutional requirement to waive court fees in civil cases is the exception and not the general rule. This case does not fall within the exception. This case differs from M.L.B. in a number of respects. First, this case is not a termination of parental rights but is a change in custody. The distinction between the two is that in this case the plaintiff continues to maintain a relationship with her children and she has a right to still seek to regain custody by filing a motion to modify custody. In a termination of parental rights case a parent does not continue to maintain a relationship with the children and does not have the right to reinstate parental rights after they have been terminated. A modification of custody is not as severe and as irreversible as a termination of parental rights. As opposed to a termination of parental rights, a modification of custody still leaves the non-custodial parent with the right to communicate with the children. A parent in a modification of custody case still maintains a relationship with the children. Finally, the court in M.L.B. v. S.L.J. in three places drew a distinction between termination of parental rights and loss of custody. Thus, at page 118 the court stated in part:
 A termination of parental rights is both total and irrevocable. Unlike other custody proceedings, it leaves the parent with no right to visit or communicate with the child.
Further, at page 121 the court stated in part as follows:
In contrast to loss of custody, which does not severe the parent-child bond, parental status termination is CT Page 4378 "irretrievabl[y] destructi[ve] of the most fundamental family relationship.
Finally, at page 127 the court stated in part as follows:
 But we have repeatedly noticed what sets parental status termination decrees apart from mine run civil actions, even from other domestic relations matters such as divorce, paternity and child custody.
This court therefore concludes that the State of Connecticut is not under a constitutional mandate to provide a transcript or waive fees in this case.
The remaining issue is whether fees should be waived under the provisions of P.B. § 63-6. That sections provides as follows:
 P.B. § 63-6. Waiver of Fees, Costs and Security — Civil Cases.
 If a party in any case where fees and costs may lawfully be waived is indigent and desires to appeal, that party may, within the time provided by the rules for taking an appeal, make written application, to the court to which the fees required by statute or rule are to be paid, for relief from payment of fees, costs and expenses. The application must be under oath and recite, or it must be accompanied by an affidavit reciting, the grounds upon which the applicant proposes to appeal and the facts concerning the applicant's financial status.
 The judicial authority shall assign the request for waiver of fees, costs and expenses for a hearing within twenty days of its filing and shall act promptly on the application following the hearing. Where a request arises out of a habeas corpus proceeding, the request shall be handled pursuant to Section 63-7
If the court is satisfied that the applicant is indigent and entitled to an appeal because of a statutory or constitutional right to court appointed counsel or allowing an indigent party to appeal without payment of fees, costs and expenses, the court may (1) waive payment by the applicant of fees specified by statute and of taxable costs, CT Page 4379 and waive the requirement of Section 63-5 concerning the furnishing of security for costs upon appeal, and (2) order that the necessary expenses of prosecuting the appeal to be paid by the state. Before incurring any expense in excess of $100, including the expense of obtaining a transcript of the necessary proceedings or testimony, counsel for the applicant shall obtain the permission of the judge who presided at the applicant's trial. The judge shall authorize a transcript at state expense only of the portions of testimony or proceedings which may be pertinent to the issues on appeal.
The plaintiff has attached an Addendum A "Statement of plaintiff's Claims and Charges to Appeal the Judgment of April 12, 1999 — Judge Axelrod."
The two issues before the court under § 63-6 are (1) is the court satisfied that the applicant is indigent and (2) is the court satisfied that the applicant is entitled to an appeal.
The waiver of fees is discretionary with the court. The court is satisfied from the plaintiff's financial affidavit dated April 22, 1999 that she is indigent. The second issue, therefore, is whether the plaintiff is entitled to an appeal. The court has already ruled that the plaintiff does not have a constitutional right to have fees waived. Further, the plaintiff does not have a statutory or constitutional right to court appointed counsel. In order for the plaintiff to be entitled to an appeal she must therefore satisfy the court that the appeal is non-frivolous. A frivolous appeal is one where the applicant's likelihood of success is slight. To determine whether the plaintiff's proposed appeal is frivolous, this court has examined the Memorandum of Decision filed by the court dated April 12, 1999 as well as the Addendum A attached to the Motion to Waive Fees coded 413. This court concludes that the plaintiff is not entitled to an appeal of this court's Decision modifying custody because the issues which she intends to raise in the appeal are frivolous. There is no likelihood that the plaintiff would succeed on the stated grounds of appeal.
 ORDER
The plaintiff's motions for transcript and the plaintiff's motion to waive fees are all denied.
Axelrod, J. CT Page 4380